GERMAN AMERICAN BANK, Appellant, vs. MAGILL and another, Respondents.

*March 16 — April 4, 1899.*

*Partnership: Firm debt: Chattel mortgages: Fraud: Insolvency.*

1. A member of a going partnership who was under no obligation to contribute further to the capital of the firm received money as guardian and it was used in carrying on the firm business, all the partners consenting.   *Held*, that liability to return the money to the wards became a partnership debt as fully and absolutely as though the money had been borrowed from a third party.

2. Where chattel mortgagees had no knowledge that the mortgagor was insolvent at the time the mortgage was given, and parted with their money relying on the strength of the security, it cannot be set aside in garnishment proceedings instituted by other creditors, unless it is shown that the mortgagors had a design to defraud their creditors and that the mortgagees participated therein.

APPEAL from a judgment of the circuit court for La Crosse county:  O. B. WYMAN, Circuit Judge.   *Affirmed.*

Proceeding by garnishment.   The firm of Scherrer, Teiml & Co., wholesale liquor dealers, was organized in 1893. Teiml died in 1897, and thereafter business was conducted

under the old firm name.   All the capital was furnished by
J. M. Scherrer.   In 1896 he was appointed guardian of cer-
tain minor children, and as such received $2,000 insurance
money belonging to his wards.   This money was used in the
firm's business.   In April, 1898, he resigned, and there was
found due his wards about $1,700.   On April 28, 1898, the
firm executed a note and chattel mortgage to the garnishee
*Salome Teiml* for $1,855.  The mortgage covered their entire
stock and fixtures.   The money was borrowed to pay the
amount due from Scherrer as guardian.   On the same day
they also sold their book accounts to *Mrs. Teiml* for $1,000.
*Mrs. Teiml* borrowed that sum from the garnishee *H. P.*
*Magill*, who took an assignment of the chattel mortgage of
the firm as collateral security for the loan.   Immediately
after the execution of the chattel mortgage *Mrs. Teiml's*
agent took possession of the mortgaged property, and was
in possession when the garnishee summons was served.  Both
garnishees answered, setting up the chattel mortgage and
claiming to hold the property thereunder.   Notice of elec-
tion to take issue upon such answers was duly served, and
the case was tried by the court.   The court found the allega-
tions of the answers to be true, and entered judgment in favor
of the garnishees, from which this appeal is taken.

For the appellant there was a brief by *McConnell &
Schweizer*, and oral argument by *C. H. Schweizer*.

*Ray S. Reid*, for the respondents.

BARDEEN, J.  The main point made by the appellant against
the validity of the trial court's judgment is that the chattel
mortgage given by the defendants is void, because the firm
was insolvent and the mortgage was given to pay the debt
of an individual member of the firm.   On the question of
fact of whether the debt for which the mortgage was given
was a firm debt or not, there is little room for controversy.
On the very day the first money was received by J. M.
Scherrer in his capacity as guardian, $400 of the amount

was used by his partner to pay a firm indebtedness. The remainder was deposited in the bank, and checked out from time to time by the firm as their necessities required, mostly by the defendant William Scherrer. The manner in which they kept their accounts cannot have a controlling influence over the actual facts. At the time the money was received by J. M. Scherrer, the firm was a going concern. Its business was established, and had been for some years. They were in apparent need of funds. They took this money and used it in their business, both partners consenting. In law it thereby became a firm debt. The facts are quite different from some of the cases in the books. This was not the case of one partner using trust funds to pay an obligation he owed the firm. J. M. Scherrer was under no obligation to contribute any more capital for the firm's use. So, when the firm took and used this money, it became as fully and absolutely a firm debt as though it had been borrowed from a third party. Both parties treated it as such, and, in the absence of any circumstances showing that the mortgage was given with intent to defraud creditors, it cannot be impeached in this proceeding.

While it may be admitted that the proof shows that the firm was insolvent at the time the mortgage was given, there is no proof that either of the garnishees had any knowledge of that fact. So far as we are able to judge, *Mrs. Teiml* took the mortgage in absolute good faith, and parted with her money relying upon the validity of the security she received. Such being the case, unless it be shown that the defendants had a design to defraud their creditors and that the garnishees participated in such fraudulent purpose, the transaction cannot be avoided in this kind of a proceeding. *Bleiler v. Moore*, 94 Wis. 385. There is no claim that any such vicious design existed, and hence the ruling of the trial court was right.

*By the Court.*— The judgment of the circuit court is affirmed.